IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WATER SERVICES, a Utah corporation, and CLEAR WATER SERVICES CC., a South Africa corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>ZOELLER COMPANY, a Kentucky corporation,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br><br><br>Case No. 2:12-CV-723 TS |

This matter is before the Court on Plaintiffs' Motion for Leave to File First Amended Complaint, to Add Necessary Parties, for Temporary Stay of Depositions, and For Scheduling Conference;[1] Plaintiffs' Motion to Stay Summary Judgment and for Additional Discovery;[2] and Defendant's Motion for Summary Judgment.[3] For the reasons stated below, the Court will grant in part and deny in part Plaintiffs' Motion for Leave to File First Amended Complaint, to Add

---

[1] Docket No. 23.

[2] Docket No. 30.

[3] Docket No. 24.

1

Necessary Parties, for Temporary Stay of Depositions, and For Scheduling Conference; will deny Plaintiffs' Motion to Stay Summary Judgment and for Additional Discovery; and will grant in part and deny in part Defendant's Motion for Summary Judgment.

## I. BACKGROUND

This case arises from oral agreements Plaintiffs Water Services, Inc. ("WSI") and Clear Water Services CC ("CWS") allegedly entered into with Defendant Zoeller Company ("Zoeller"). Some time prior to May 19, 2010, WSI—through its President Richard Hill ("Hill")—and Zoeller entered into a nonexclusive contract ("Authorized Representative agreement") wherein WSI was obligated to market and sell Zoeller pumps in the Middle East, Africa, and other locations. WSI was to process and respond to leads, set up a dealer network, attend trade shows, and promote the Zoeller brand. In return, Zoeller provided leads for sales to WSI and provided technical and marketing information.

Initially, WSI purchased products from Zoeller on credit and then was required to make payments within thirty days. By September 2010, WSI had fallen behind on payments to Zoeller. The parties dispute whether falling behind on payments constituted a breach of the Authorized Representative agreement. WSI claims the parties modified the payment schedule. Zoeller argues WSI's past due status constituted a total breach of the agreement.

The contract had no specific duration and was terminable at will by either party. The contract was not exclusive in that Zoeller was free to establish relationships with other representatives in WSI's target area. However, the parties dispute whether Zoeller, during the duration of the contract, owed WSI commissions on all sales in WSI's territories, which included

2

Africa and the Middle East. WSI argues that while Zoeller was free to deal directly with dealers and customers within WSI's territories, Zoeller could do so only so long as WSI received its commission for all sales and shipments into the territories. Zoeller definitively terminated the agreement with WSI on June 27, 2011.

CWS is a South African Zoeller dealer recruited by WSI under the Authorized Representative agreement to sell Zoeller products. CWS is unable to point to any agreement, written or oral, with Zoeller. Sometime in 2010, the two owners of CWS, Hayden Turner ("Turner") and David Bibb ("Bibb"), formed a new corporate entity called Zoeller Pumps South Africa ("ZPSA"). Turner and Bibb used ZPSA as a marketing tool to sell Zoeller products. ZPSA used the Internet domain www.zoellerpumps.co.za and used Zoeller's name and logo. The parties dispute whether Zoeller authorized CWS to use Zoeller's name, logo, and information from its website to promote ZPSA. In May 2012, Zoeller's counsel sent a letter to ZPSA demanding that ZPSA change its name to one that did not include the word Zoeller, transfer the website domain, cease using Zoeller's name and logos, and agree not to use such in the future. ZPSA ignored Zoeller's demands that ZPSA cease use of Zoeller's name and logos and filed this lawsuit in the name of CWS alleging breach of contract, breach of the covenant of good faith and fair dealing, equitable estoppel, and unjust enrichment.

## II. LEAVE TO AMEND

Plaintiffs seek leave to amend the Complaint to add additional defendants, Gerhard Cronje and Maskam Water (collectively, the "Maskam parties"). Plaintiffs also seek to add two additional claims for relief—tortious interference with economic relations and civil conspiracy.

The Federal Rules of Civil Procedure provide that after a responsive pleading has been filed "a party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."[4] The purpose of the rule is to provide litigants a "maximum opportunity" for claims to be decided on their merits rather than on "procedural niceties."[5] Proper reasons to deny such a request include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."[6] "Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial."[7]

The Court will deny Plaintiffs' Motion for Leave to Amend because it is untimely and prejudicial. The Motion is untimely because discovery is now closed, yet Plaintiffs seek to add additional claims and additional defendants to this lawsuit. Plaintiffs have no adequate explanation for the delay. Plaintiffs knew the Maskam parties were potentially implicated in this suit from the outset. In their original Complaint, Plaintiffs allege Zoeller worked directly with South African dealers. Further, during WSI's 30(b)(6) deposition, Hill testified that he knew Zoeller dealt directly with the Maskam parties.

---

[4] Fed. R. Civ. P. 15(a)(2).

[5] *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982).

[6] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).

[7] *Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990).

Granting leave to amend would be prejudicial to the Defendant because it would result in substantial additional discovery even though discovery is closed and a motion for summary judgment has been filed. Allowing amendment would also prejudice the Maskam parties. These individuals are, as of now, unrelated to the lawsuit and will face prejudice by being named in the case at this late stage. The Court will deny Plaintiffs' request for leave to amend, to add additional parties, and for a scheduling conference. The Court takes up Plaintiffs' Motion to Stay Depositions after analyzing summary judgment.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[9] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[10]

---

[8] Fed. R. Civ. P. 56(a).

[9] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[10] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

IV. DISCUSSION

Plaintiffs' Complaint alleges four causes of action against Defendant: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) equitable estoppel, and (4) unjust enrichment.

A.   BREACH OF CONTRACT

Because the Court is sitting in diversity jurisdiction, it will apply the substantive law of the State of Utah.[11] Elements of a breach of contract claim are as follows: "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[12]

WSI asserts that Zoeller breached the Authorized Representative agreement by failing to pay all commissions owed to WSI under the agreement. Zoeller argues that WSI's failure to timely pay money it owed Zoeller constituted a full breach of the Authorized Representative agreement and relieved Zoeller of its obligations to perform under the contract. In response, WSI claims that Zoeller either waived the alleged breach or agreed to modify the Authorized Representative agreement to allow WSI additional time to pay Zoeller the money it owed.

Zoeller and WSI concede the existence of a contract. As to damages, "[n]ominal damages are recoverable upon a breach of contract if no actual or substantial damages resulted

---

[11] *MediaNews Grp., Inc. v. McCarthey*, 494 F.3d 1254, 1260 (10th Cir. 2007) (citing *Ahrens v. Ford Motor Co.*, 340 F.3d 1142, 1145 (10th Cir. 2003)).

[12] *Bair v. Axiom Design, LLC*, 20 P.3d 388, 392 (Utah 2001).

from the breach or if the amount of damages has not been proven."[13] The issues presented, then, are whether there was performance by WSI and whether there was a breach by Zoeller.

1.     PERFORMANCE BY WSI

Waiver ensures that one party to a contract "may not lull the other into a false assurance that strict compliance with a contractual duty will not be required and then sue for noncompliance."[14] "The applicability of waiver depends on the intent of the non-breaching party. If he has intentionally relinquished a known right, either expressly or by conduct inconsistent with an intent to enforce that right, he has waived it and may not thereafter seek judicial enforcement."[15] Moreover, "any contract term may be modified by the conduct of the parties."[16]

WSI claims that Zoeller agreed to accept payments late, agreed to work out terms on the past due amounts, and encouraged WSI to continue to perform its obligations under the parties' agreement.[17] The record, when viewed in the light most favorable to WSI, supports such an argument. A letter dated September 27, 2010, from Billy Walker, the International Accounts Manager at Zoeller, to Hill informed Hill that WSI's account was delinquent. The letter indicated that "not bringing your current balance to good standing in a timely manner may result

---

[13] *Id.* (quoting *Turtle Mgmt., Inc. v. Haggis Mgmt., Inc.*, 645 P.2d 667, 670 (Utah 1982)).

[14] *Lone Mountain Prod. Co. v. Natural Gas Pipeline Co. of Am.*, 710 F. Supp. 305, 311 (D. Utah 1989) (citation omitted).

[15] *Id.* (citation omitted).

[16] *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1004 (Utah 1991).

[17] Docket No. 31 Ex. 1, at 4; Ex. 2, at 4.

in suspension of Water Services Representative status with Zoeller Company."[18] The letter also indicated that WSI "shall have terms of CIA (Cash in Advance) plus 10% of outstanding balance on all orders received."[19] Yet, the parties do not dispute that on March 22, 2011, WSI was past due on payments to Zoeller in the amount of $14,012.01. Further, approximately one month later, on May 25, 2011, WSI was past due on payments to Zoeller in the amount of $43,430.84.

Despite the September 2010 letter, and WSI's growing past due amounts, Zoeller did not terminate the agreement with WSI until June 27, 2011, nor does it appear Zoeller enforced the cash in advance terms. Based on this, the Court finds that a genuine dispute exists as to whether Zoeller waived, either expressly or impliedly, the thirty-day payment requirement or modified the payment arrangements with WSI. Therefore, whether WSI adequately performed under its agreement with Zoeller is not appropriately resolved at summary judgment.

 2. BREACH BY ZOELLER

Zoeller claims that the Authorized Representative agreement was non-exclusive and nothing in the agreement precluded Zoeller from developing its business relationships and entering into contracts with the Maskam parties or anyone else. Zoeller also argues that commissions were not a part of the parties' agreement. WSI contends that Zoeller did not terminate the Authorized Representative agreement until June 2011 and remained obligated to pay commissions to WSI on all sales in WSI's territory, including sales made directly to the Maskam parties.

---

[18]*Id.* at 15.

[19]*Id.* at 16.

In their Complaint, Plaintiffs allege "Zoeller breached the Agreement with Plaintiffs by encouraging select dealers in Africa to purchase directly from Zoeller as opposed to Plaintiffs and by attempting to block Plaintiffs' ability to market Zoeller products entirely."[20] Plaintiffs' Complaint does not, at any point, mention the word commission. Zoeller admits it paid WSI commissions on sales in WSI's territory that WSI did not originate, however, Zoeller argues that it was not obligated to do so under the Authorized Representative agreement. The first time commissions were mentioned at all was in Zoeller's counterclaims where Zoeller alleges that WSI was improperly paid commissions on sales in which it had no involvement.

In an interrogatory, WSI was asked to describe in detail the Authorized Representative agreement and detail the terms and conditions of that agreement. WSI insisted that "Zoeller . . . already has the requested information" and that "Plaintiffs have already provided the requested details regarding the agreement and Zoeller's breaches of the same in Plaintiffs' Complaint."[21] In the interrogatories, WSI concedes the Authorized Representative agreement was not an exclusive agreement.[22]

Finally, in its 30(b)(6) deposition WSI described Zoeller's obligations under the Authorized Representative agreement by noting that Zoeller was obligated to:

> A.     Provide leads for specific areas. Provide the pumps. Provide the supporting technical information, marketing information. Everything necessary to sell the pumps to the customer.
> Q.     Is there anything else Zoeller was obligated to do under the agreement?

---

[20]Docket No. 1 Ex. 1, at 5.

[21]Docket No. 24 Ex. 4, at 9.

[22]*Id.* at 10.

A. Under—in some cases, for example, with the Zoeller Engineered Product, that required more involvement, where you'd have to maybe go get a quote from Zoeller for that, because the—it wasn't a strictly price quote out of a price sheet.[23]

To support its position that commissions were owed under the Authorized Representative agreement, WSI cites to the June 27, 2011, termination letter where Zoeller terminated WSI's representative status. The letter states that WSI "will continue to receive commissions, on a residual basis, for products invoiced and shipped into your territory through June 30th, 2011."[24] WSI also cites to Zoeller's response to a discovery request where Zoeller admits that "Plaintiffs received Commissions on sales that it did not participate because as sales representatives Plaintiffs would receive Commissions based on all sales from customers in their territory."[25] Finally, in WSI's 30(b)(6) deposition, Hill stated, "Water Services received financial remuneration for all the sales in an exclusive basis in those two areas, so in that sense [the agreement] was exclusive."[26]

Zoeller persuasively argues that the commissions to which these sources refer are commissions Zoeller would have paid to anyone who sold Zoeller products and were unrelated to the Authorized Representative agreement. Although the weight of the evidence is squarely against WSI as to whether commissions were a term of the parties' Authorized Representative agreement, a genuine issue of material facts exists as to whether commissions were obligated and

---

[23]Docket No. 27 Ex. 1, at 60.

[24]Docket No. 31 Ex. 1, at 16.

[25]*Id.* Ex. 8, at 2.

[26]Docket No. 27 Ex. 1, at 61–62.

therefore owed to WSI. Because of this, summary judgment is inappropriate on WSI's breach of contract claim. As to CWS's contract claim, neither party can point to a written or oral agreement between CWS and Zoeller. In fact, Plaintiffs themselves concede that CWS's contract claim should be dismissed.[27] The Court will grant summary judgment to Defendant on CWS's breach of contract claim.

B.    GOOD FAITH AND FAIR DEALING

In determining whether there has been a breach of the implied covenant of good faith and fair dealing, a Court cannot simply examine the express terms of a contract.[28] "The obligation of good faith requires each party to refrain from actions that will intentionally destroy or injure the other party's right to receive the fruits of the contract."[29] "Whether a violation has occurred is a factual issue, which is generally inappropriate for decision as a matter of law."[30]

The evidence shows that there is a factual dispute as to whether commissions were due to WSI on all Zoeller product sales in WSI's territories. If, as WSI suggests, Zoeller did not pay commissions it owed then Zoeller may have breached the covenant of good faith and fair dealing by interfering with WSI's ability to meet its own financial obligations to Zoeller. Taking facts in the light most favorable to Plaintiff, a reasonable jury could find that Zoeller's actions were inconsistent with the common purpose and justified expectations WSI had under the parties'

---

[27] Docket No. 31, at 34.

[28] *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991).

[29] *Oakwood Vill. LLC v. Albertsons, Inc.*, 104 P.3d 1226, 1239 (Utah 2004).

[30] *AccessData Corp. v. ALSTE Techs. GmbH*, 2009 WL 1743767, at *2 (D. Utah June 18, 2009) (citation omitted).

contract. The Court will deny Defendant's Motion as it relates to WSI. CWS's good faith and fair dealing claim fails for the same reason its contract claim fails. Therefore, the Court will grant the Motion as against CWS.

C.     EQUITABLE ESTOPPEL

Utah case law requires proof of three elements for equitable estoppel:

> (i) a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted; (ii) reasonable action or inaction by the other party taken or not taken on the basis of the first party's statement, admission, act, or failure to act; and (iii) injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act.[31]

There appears to be confusion between equitable estoppel and promissory estoppel on the part of both parties. "The primary difference between promissory and equitable estoppels is that the former is offensive and can be used for the affirmative enforcement of a promise whereas the latter is defensive and can be used only for preventing the opposing party from raising a particular claim or defense."[32] Because equitable estoppel is not a claim but a defense, the Court will grant summary judgment in favor of Defendant on Plaintiffs' equitable estoppel claim. Even if the Court were to construe this claim as a promissory estoppel claim, it still fails because WSI operated under an express agreement and because CWS cannot provide any evidence that it acted in reliance on a promise by Zoeller.

---

[31] *Nunley v. Westates Casing Servs., Inc.*, 989 P.2d 1077, 1088 (Utah 1999).

[32] 28 Am. Jur. 2d *Estoppel and Waiver* § 34 (2013).

D.  UNJUST ENRICHMENT

Unjust enrichment requires three elements:

> First, there must be a benefit conferred on one person by another. Second, the conferee must appreciate or have knowledge of the benefit. Finally, there must be the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.[33]

Ordinarily "recovery under an unjust enrichment theory is available only when 'no enforceable written or oral contract exists.'"[34] However, "even where there is an express contract, an equitable claim may be viable, under specific factual circumstances, if the equitable claim is based on a separate representation or misleading act arising independently of the express contract."[35]

Plaintiffs argue that they invested significant time and funds to establish the Zoeller brand in South Africa, did so with authorization by Zoeller, and stockpiled Zoeller products in response to that authorization. Plaintiffs seek compensation for these efforts. Further, WSI argues that Zoeller was unjustly enriched by working directly with the Maskam parties in WSI's territory and not paying commissions owed to WSI on those sales.

---

[33]*Desert Miriah, Inc. v. B & L Auto, Inc.*, 12 P.3d 580, 582 (Utah 2000) (citations and internal quotation marks omitted).

[34]*Wood v. Utah Farm Bureau Ins. Co.*, 19 P.3d 392, 396 (quoting *Bailey-Allen Co. Inc. v. Kurzet*, 876 P.2d 421, 425 (Utah Ct. App. 1994)).

[35]*E & M Sales W., Inc. v. Diversified Metal Prods.*, 221 P.3d 838, 841 (Utah Ct. App. 2009).

13

As a threshold matter, the Court finds that the acts alleged by WSI relating to the sales to the Maskam parties do not arise independent of the alleged contract.[36] Thus, to the extent WSI's contract claims are viable, the Court finds that its unjust enrichment claims based on Zoeller's sales to the Maskam parties fail as a matter of law. The Court would note however that Zoeller has conceded the existence of an oral contract between Zoeller and WSI merely "[f]or purposes of this motion."[37] Thus, to the extent Zoeller seeks to establish at trial that a contract does not exist, the Court will allow WSI to pursue, as an alternative theory, its surviving unjust enrichment claims.

Turning to CWS's unjust enrichment claim, it is undisputed that CWS had no contractual relationship with Zoeller. Rather, Zoeller contends that summary judgment is proper on CWS's claim because CWS cannot point to any benefit it conferred on Zoeller and, even assuming a benefit was conferred, CWS cannot show circumstances that make it inequitable for Zoeller to keep said benefit.

Here, CWS stockpiled Zoeller products to its own detriment and expended sums in marketing Zoeller products. CWS asserts that it was authorized to market on Zoeller's behalf and that because of the way business is done in South Africa, it felt entitled to utilize the Zoeller name and logo to market on Zoeller's behalf. CWS's assertions are not supported by the record before the Court. In fact, Zoeller requested CWS stop using Zoeller's name, logos, and the misleading URL www.zoellerpumps.co.ca, yet CWS refused.

---

[36]*Id.*

[37]Docket No. 24, at X.

Furthermore, because of CWS's actions in misappropriating Zoeller's name in an attempt to take advantage of Zoeller's goodwill, CWS is unable to show that it conferred a benefit to Zoeller "under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value."[38] Thus, the Court finds that, even viewing the evidence in the light most favorable to CWS as non-movants, a reasonable juror could not find that CWS conferred a benefit on Zoeller that it would be inequitable for the Zoeller to retain without payment of its value to CWS.

In sum, the Court will grant summary judgment on Plaintiffs' unjust enrichment claim as to CWS and as to those claims WSI seeks to bring independently of the alleged oral contract.

E.  ATTORNEY FEES

In its Motion for Summary Judgment, Defendant seeks attorney fees. "In civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith."[39] "A claim is without merit if it is frivolous, is of little weight or importance having no basis in law or fact, or clearly lacks a legal basis for recovery."[40] In order for there to be bad faith one must lack an honest belief in the propriety of the activities in question, must have an intent to take

---

[38] *Desert Miriah*, 12 P.3d at 582.

[39] Utah Code Ann. § 78B-5-825.

[40] *Utah Telecomm. Open Infrastructure Agency v. Hogan*, 294 P.3d 645, 651 (Utah Ct. App. 2013) (citation and internal quotation marks omitted).

unconscionable advantage of others, or have knowledge of the fact that the activities in question will hinder, delay, or defraud others.[41]

Although the Court will grant summary judgment on the majority of Plaintiffs' claims, the Court cannot find that these claims were brought in bad faith. Accordingly, the Court will deny Zoeller's request for attorney fees.

## V. REOPEN DISCOVERY

Plaintiffs seek a temporary stay of depositions that, because fact discovery is closed, the Court will construe as a motion to reopen discovery. Prior to the close of fact discovery, the parties agreed to hold depositions of Zoeller employees in Kentucky on August 5 and 6, 2013. Plaintiffs then sought leave to amend and a stay of depositions. Plaintiffs cancelled the depositions pending the outcome of the motion immediately before the Court. Fact discovery closed on July 12, 2013.

The Court may modify its scheduling orders upon a showing of good cause.[42] Whether to modify a scheduling order "to extend or reopen discovery is committed to the sound discretion" of the Court.[43] In exercising its discretion, the Court considers the following factors: (1) whether trial is imminent, (2) whether the request is opposed, (3) prejudice to the non-moving party, (4) whether the moving party was diligent in obtaining discovery, (5) the foreseeability of the need

---

[41] *Salt Lake Cnty. v. Butler, Crockett & Walsh Dev. Corp.*, 297 P.3d 38, 44 (Utah Ct. App. 2013).

[42] Fed. R. Civ. P. 16(b)(4).

[43] *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987).

16

for additional discovery in light of the time allowed for discovery by the Court, and (6) the likelihood that discovery will lead to relevant evidence.[44]

Some factors weigh strongly in favor of Plaintiffs. The trial is not imminent. It is set for March 31, 2014. The depositions sought here can reasonably be accomplished without delaying trial. Additionally, deposing Zoeller employees is likely to lead to relevant evidence. Finally, the need for an extension, while not foreseeable due to the case's complexity, is foreseeable due to the document production by Zoeller that occurred on the eve of the close of fact discovery.

Nevertheless, Defendant opposes reopening discovery and argues that doing so would be prejudicial in light of Plaintiffs' lack of diligence in pursuing discovery. Zoeller is concerned about the time and resources it has spent in completing its fact discovery, and the possibility that it may be required to engage in substantial additional discovery.

In light of this Court's Order denying leave to amend, Zoeller will not need to defend any new causes of action nor will Zoeller need to engage in substantial additional discovery. Thus, Zoeller will be in the same position it would have been in had the depositions actually proceeded. Zoeller will not be unduly prejudiced if discovery is reopened on a limited basis.

Because there is no prejudice to Defendant, the Court will grant the request. The Court will allow WSI to conduct discovery limited to taking the depositions they had previously scheduled for August 5 and 6, 2013. In lieu of a scheduling conference, the Court directs the parties to conduct the previously scheduled depositions within thirty days.

---

[44] *Id.*

## VI. STAY SUMMARY JUDGMENT

Rule 56(d) of the Federal Rules of Civil Procedure states that when a party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" the court may "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."[45] The party seeking such a stay must identify the unavailable facts needed to oppose a summary judgment motion and the steps the party has taken to obtain those facts.[46] The party must also "state with specificity how the additional material will rebut the summary judgment motion."[47]

A stay is not warranted in this case. The information Plaintiffs identify in support of their Motion to Stay is limited to WSI's breach of contract and breach of the implied covenant of good faith and fair dealing claims. As discussed previously, each of these claims survive summary judgment. Plaintiffs do not state with specificity how any additional information might relate to the claims upon which Defendant is entitled to summary judgment. The Court will therefore deny Plaintiffs' Motion to Stay Summary Judgment and for Additional Discovery Pursuant to Rule 56(d).

---

[45] Fed. R. Civ. P. 56(d).

[46] *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006).

[47] *Ezra v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000).

## VII. CONCLUSION

It is therefore

ORDERED that Plaintiffs' Motion for Leave to File First Amended Complaint, to Add Necessary Parties, for Temporary Stay of Depositions, and for Scheduling Conference (Docket No. 23) is GRANTED IN PART AND DENIED IN PART. Pursuant to this Order, the parties are instructed to conduct the necessary depositions within thirty (30) days. It is further

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 24) is GRANTED IN PART AND DENIED IN PART. It is further

ORDERED that Plaintiffs' Motion to Stay Summary Judgment and for Additional Discovery Pursuant to Rule 56(d) (Docket No. 30) is DENIED.

Under separate order, the above-entitled matter will be referred to a magistrate judge to conduct a settlement conference pursuant to DUCivR 16-3(b).

DATED   November 7, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge